[S. F. No. 15906. In Bank.—April 22, 1938.]

CALIFORNIA CANNING PEACH GROWERS (a Nonprofit Cooperative Association), Appellant, v. FRANCES O. WILLIAMS et al., Defendants; A. D. POGGETTO et al., Respondents.

Agnew & Boekel, Carroll Single, Stanley J. Cook and G. F. Good for Appellant.

Richard W. Young, Floyd B. Cerini and F. X. Kerner, as *Amici Curiae,* on Behalf of Appellant.

Hadsell, Sweet, Ingalls & Lamb, Brown & Rosson and Vernon F. Gant for Respondents.

THE COURT.—This action was commenced by the California Canning Peach Growers against Frances O. Williams and E. R. Williams (husband and wife) and A. D. Poggetto to recover from them $21,333.12 (reduced at the time of trial by stipulation to $21,226.66) alleged to be owing to the association by these parties. In addition the association seeks to recover liquidated damages for failure on the part of defendants to deliver to the association their 1935 crop from the Empire ranch. The complaint sets forth the entire theory of plaintiff's cause of action in detail. Poggetto is sued as a silent partner, coadventurer or undisclosed principal of the Williams. The action covers all of Williams' activities with the association for many years, covers many separate contracts and many different ranches.

The action has been tried twice. At the end of the first trial judgment was entered in Mrs. Williams' favor, but against Mr. Williams and Poggetto in the sum of $21,226.66. On the issue of liquidated damages for nondelivery from the Empire ranch for 1935 the court found in favor of all defendants. The basis of the trial court's decision was that Poggetto was a partner of Williams in the various transac-

tions described in the complaint; that the only contracts held by Williams and Poggetto were regular marketing agreements; that the evidence tending to show that the parties intended to enter into renter member contracts was inadmissible for the reason that it violated the parol evidence rule; and that the resolution of January, 1924, purporting to authorize the renter member contracts was *ultra vires* and illegal. Thereafter, on motion of Mr. Williams and Poggetto, the trial court granted a new trial as to them. A new trial, before the same judge, was thereafter had, the parties stipulating that the cause could be tried on the record of the first trial. This second trial resulted in the judgment now appealed from that the association take nothing from defendants Mr. Williams and Poggetto.

The judgment in favor of Mrs. Williams has become final. The association did not move for a new trial after judgment was entered in her favor at the conclusion of the first trial. No appeal has been taken from that judgment. The rights of the association as against her are therefore not involved on this appeal.

No necessity exists for reviewing in detail each of the contracts between Williams and the association involved on this appeal. Williams was one of the organizers of appellant, was a director from 1922 to 1935, and was at one time vice-president. Poggetto during all of the times here involved was general manager of appellant. From 1922 to 1928 Williams owned several peach orchards. As to each of such orchards he signed a regular marketing agreement with the association, became an owner member, and was paid for his fruit accordingly. In 1928 he lost the ownership of his various ranches through foreclosures. Beginning in 1929 and continuing thereafter he rented various orchards and signed them up with the association under what he and the association believed were renter member contracts. It is appellant's theory that all of the deals subsequent to 1928 were regular marketing contracts, and that payments made in excess of the amounts called for by such contracts are recoverable by the association.

The evidence shows that in 1929 the association was badly in need of peaches, a heavy frost having destroyed a large portion of the expected crop. Williams discovered that the Empire ranch in Stanislaus County was unaffected by the

frost, contained a large acreage of growing peaches, and was for sale. Being unable to finance the deal himself Williams asked Poggetto if he would like to buy the Empire ranch, Williams to operate it. Poggetto agreed and purchased the ranch. Williams then entered into a renter member contract with the association, Schmitt signing on behalf of the association. The procedure followed was substantially that described in the Williams case, *ante,* p. 221 [78 Pac. (2d) 1154], decided this day—that is, a regular marketing agreement was executed with the words "Renter Member" written on the cover, the understanding being that the renter member was to receive market price less 25 cents per ton for his fruit. Poggetto financed operations.

During the years 1929 to 1934 (1932 being excepted) Williams rented or leased other orchards not owned by Poggetto, and as to each of them entered into similar contracts with the association. In all of these deals he was financed largely by Poggetto. On most of these deals he was paid on a renter member basis as defined in the 1924 resolution. After the new directors were elected in 1935, and the change in policy at least as to some renter members adopted, this action was brought. The major portion of the $21,226.66 sued for ($14,101) is for the recovery of alleged overpayments paid to him on the theory that he was a renter member. $5,268.55 is for an amount owed by Williams to the association for the year 1927 growing out of the operation of the Sunnydale ranch then owned by him, which amount was apparently written off as a bad debt by mistake. The balance is for smaller items not necessary to enumerate.

The trial court made elaborate findings. It found the facts in reference to the difficulties facing the association in 1923, and the circumstances surrounding the passage of the renter member resolution of January 15, 1924, substantially as such facts were found in the other three cases involving this association and already disposed of. These facts need not be recounted here. The court found that this resolution was in fact passed in that year and has never since been amended, rescinded or repealed. Appellant challenges this finding, contending that the evidence introduced by it indicates that the resolution was never passed and that the minutes purporting to show its passage are forgeries. Evidence was introduced by appellant that the minutes purport-

ing to cover the January 15, 1924, meeting of the board of
directors had been recently retyped, but this was admitted
and fully explained by respondents' witnesses. Several of
the members of the board of directors who were supposed
to have voted for the 1924 resolution testified that they "could
not remember" having voted for the resolution. Respondents
introduced considerable evidence on this issue, and the trial
court has found in accordance therewith. In our opinion
the overwhelming weight of the evidence establishes that the
resolution was in fact passed and that the minutes correctly
state the proceedings of the board of directors on January 15,
1924.

The trial court also found that after the passage of the
resolution, pursuant thereto, the field men of the association
were instructed to solicit renter members; that during the
period 1924 to 1935 many such members were solicited and
signed with the association as renter members; that such
members, during such period, were paid in accordance with
the 1924 resolution; that during this period the renter mem-
ber situation was frequently discussed by the members of
the board of directors; that the fact that the association would
and did make contracts with renters in accordance with the
1924 resolution "was generally known among renters of
peach orchards". The court also found that many important
benefits accrued to the association by reason of these renter
member contracts. Those benefits have been commented on
in the prior decisions and need not be repeated here. All
of the findings above discussed find ample support in the
record.

The court found that after 1928 Williams did not own
any peach orchards, and that all of his outstanding owner
contracts were terminated in that year. The court then made
specific findings as to each of the many ranches rented by
Williams during 1929 to 1934 and signed up by him with
the association. With the exception of the Empire ranch,
these many ranches and contracts do not require separate
consideration. They are all controlled by substantially the
same facts and the same principles of law. The Empire
ranch, for reasons hereafter appearing, requires separate
consideration.

First as to the ranches other than the Empire. As to each
of them the trial court found that Williams rented them

from their owners; that he.then entered into renter member contracts with the association as to each ranch, substantially in the manner fully described in the Williams case, *supra;* that as to each of said contracts, except as limited in the findings they "have been fully executed, settled and discharged"; that in the operation of said ranches "defendant A. D. Poggetto was a co-partner with the defendant E. R. Williams". Respondents denied the existence of the partnership, and claimed that Williams rented the ranches from Poggetto, but the trial court on substantial and conflicting testimony found against them on this contention. Respondents, of course, on appellant's appeal cannot question the correctness of this finding.

As to each of the contracts dealing with these ranches appellant urges that the only legal contract between the parties was a regular marketing agreement; that the renter member arrangement was entirely oral; that to show the existence of such oral contract violates the parol evidence rule; and that respondents have therefore been overpaid in excess of the amount called for by the written contracts.

This identical contention as to substantially similar facts has been fully discussed in the Williams case, *supra.* Everything that was said in that case is equally applicable here. Not only did the admission of the oral testimony not violate the parol evidence rule for the reasons pointed out in the Williams case, but as also pointed out in that case, even if the renter member arrangements were entirely oral, inasmuch as such arrangements have been fully performed, the written contracts must be deemed to have been modified by the execution of the oral contracts.

Appellant also urges that the resolution of 1924 was *ultra vires,* and that all contracts entered into pursuant thereto must be held to be void and illegal. This contention has been discussed at length and disposed of adversely to appellant's contention in the Harkey, Stafford and Williams cases, decided this day (*ante,* pp. 188, 212, 221 [78 Pac. (2d) 1137, 1150, 1154].) On the authority of those cases, and for the reasons therein stated the point is held to be without merit.

Appellant also urges that in view of the fact that Williams was a director and former officer of the company, and that his partner Poggetto was general manager of the company, even if renter member contracts entered into by

the association with third parties could not be successfully challenged by it, such contracts entered into with its officers and directors can be so challenged. Substantially the same point is involved in the Williams case, *supra,* and decided adversely to appellant. The same reasoning is here applicable. The transactions now under discussion were not special transactions, but were normal ordinary transactions entered into pursuant to a formal resolution of the board of directors. Similar transactions were entered into with many other renters to the benefit of all concerned. Williams and Poggetto were under no legal or moral obligation to sell the fruit from these rented orchards to the association. They had complete freedom of choice, and were as free as any other renter to bargain with the association as to these orchards. There is no evidence that either Williams or Poggetto abused their position of trust in consummating the contracts now under discussion. As to these contracts it is our holding that they were renter member contracts within the meaning of the 1924 resolution, and that respondents were properly paid as therein provided.

An entirely different situation exists as to the Empire ranch. This ranch was purchased by Poggetto in 1929, and from that date until May of 1935 he owned this ranch. As to the year 1929, the court below made no finding as to whether Poggetto and Williams were partners in the operation of this ranch, but simply found that in that year Williams operated the ranch for Poggetto under an agreement to split the gross profits equally, Williams to bear the expenses. For the years 1930, 1931, 1933 and 1934 the court expressly found that as to the operation of this ranch "A. D. Poggetto was a co-partner with the defendant E. R. Williams". The reason for the failure to make a similar finding as to the year 1929 does not clearly appear, although there is some evidence of a different arrangement between the two defendants as to this year than existed in the later years. As to the years 1930, 1931, 1933 and 1934 the finding is amply supported. As to these four years, therefore, Poggetto was the owner of the Empire ranch and Williams was his partner. Under the provisions of the resolution of January 15, 1924, the privileges therein granted were restricted to renters of orchards. Owners of ranches not renting their orchards were not qualified to come under the resolution. Owners were admissible to

the association only under a regular marketing agreement. This Poggetto, as general manager, and Williams, as director, well knew. To permit them, as owners, to use their confidential position with the association to secure the benefits of the 1924 resolution open only to renters and not open to owners would be to countenance a fraud upon the owner members of the association. The cases cited by appellant—*California Canning Peach Growers* v. *Downey,* 76 Cal. App. 1 [243 Pac. 679]; *California Canning Peach Growers* v. *Harris,* 91 Cal. App. 654 [267 Pac. 572]; *California Canning Peach Growers* v. *Bardell & Oregoni,* 132 Cal. App. 153 [22 Pac. (2d) 764], holding that, as to owner members all must stand upon an equal basis are directly in point on this phase of the case. Those cases clearly establish that as to owner members the interests of every member rest upon the same foundation, and no such member can secure an advantage to the injury of any other member. Clearly Poggetto and Williams were not entitled to the renter member price for the Empire peaches in the years 1930, 1931, 1933 and 1934. Having elected to deliver the fruit from the Empire ranch—an owned orchard—to the association they must be held to the same price received by other owner members. The error in allowing respondents renter member price for their Empire peaches for these years materially affected the judgment. This is made clear by a consideration of other findings.

The trial court found that in 1927 Williams as owner operated the Sunnydale ranch under a regular marketing agreement; that the association (deducting certain credits) overpaid Williams for the peaches delivered from this ranch in that year the sum of $5,268.55; that Poggetto was not interested in the operations of this ranch; that the above mentioned sum was written off the books of the company as a bad debt (apparently by mistake); that Williams has never repaid the sum thus owing to the association. Although the court found that Williams owed this sum to the association, it also found that this debt was offset by various sums found owing to Williams by the association. One of the claims found to partially offset Williams' debt to the association was the sum of $223.39, that the association owed to Williams under his 1927 contract covering the El Camino ranch, and has not paid. Poggetto had no interest in this ranch. This is a proper credit against the debt owed by

Williams to the association, and appellant so concedes. The court also found that in the year 1930 when Williams and Poggetto were operating the Merci ranch as partners the association improperly deducted from the purchase price of the peaches the sum of $1,089.48, which sum was in fact due from one Ross Dennison. The court found that neither Poggetto nor Williams had any interest in Dennison's operations. This finding is challenged by appellant, but finds ample support in the record. It is clear therefore that the allowance of this sum was also a proper offset against Williams' debt to the association. The balance of the offsets allowed by the trial court were in connection with the Empire ranch operations. The court found that in 1930 Williams had been paid $1314.25 less than was due him for peaches from this ranch; that in 1931 he was underpaid $2,456.50; and in 1934 in the sum of $467.50. These sums were all held to be proper credits against the sum owing to the association by Williams. The amounts are predicated on the theory that for those years Williams was entitled to be paid as a renter member, while as a matter of fact he was paid as an owner member. Inasmuch as we have already held that as to this ranch he and Poggetto are not entitled to the renter member preference, it follows that the above sums, representing such preference, are not in fact owing by the association, and should not have been allowed as an offset.

For the year 1933, as to the Empire ranch, the court found that Williams had been paid as a renter member. In the amount the renter member price exceeds the owner member price, in accordance with the views already expressed, this constituted an overpayment. Williams and Poggetto should be required to repay to the association such overpayment received by them.

For the year 1929, as to the Empire ranch, the court found that Williams had been paid as a renter member; but, as already indicated, did not find whether or not Williams was a partner of the owner Poggetto in this year. On the retrial if it should develop that they were partners for that year, they should be required to repay the overpayment.

Another credit allowed by the trial court was in the sum of $533.81 for freestone peaches found to have been delivered by Williams to the association in 1933 and for which he has not been paid. The evidence in reference to this

item is highly unsatisfactory. In view of the necessity for a retrial in reference to other issues, this issue should also be retried.

Appellant objects to the finding that the indebtedness of $5,268.55 above mentioned was owed solely by Williams, and not also by Poggetto. That finding is amply supported by the record.

The appellant also objects to the findings and conclusions that deny it the right to liquidated damages for respondents' failure to deliver to the association from the Empire ranch for the season of 1935. The court found that this ranch was sold by Poggetto to Mrs. Williams in May of 1935, and that thereupon the contract between Mr. Williams and the association was terminated in accordance with the terms of the contract. The judgment in favor of Mrs. Williams, as already pointed out, has become final.

Appellant urges that the sale to Mrs. Williams was not *bona fide*. The evidence demonstrates that Mrs. Williams purchased the ranch in 1935 with borrowed money and that Mr. Williams did not contribute one cent towards its purchase. The evidence supports the trial court's findings on this issue. It should also be pointed out that the evidence shows that the association accepted the cancellation of this contract.

In addition to the main item of $5,268.55 found to be owing from Williams to the association, above discussed, the trial court also found that Williams owed some small sums for fertilizer purchased by him. These items, as well as the amount of the judgment in the Williams case, *supra,* should be taken into consideration on the new trial in arriving at a proper accounting.

From what has been said it is obvious that a new trial must be had as to some of the issues involved herein. No necessity exists for the retrying of any issue held in this opinion to have been properly decided. Those issues decided upon conflicting evidence which evidence has been held herein sufficient to support the findings, should not be retried. A new accounting must be had in order to determine the proper amount owing by Williams, particularly because of his operation of the Empire ranch, and to determine the proper amount of the offsets that should be allowed him. The status of the Empire ranch for the year 1929 must be determined.

The validity of Williams' claim for an allowance for free-stone peaches in 1933 must be passed upon. It must be determined what debts are owing solely by Williams, and those that are owing by Williams and Poggetto as partners, and also what credits are properly allowable to Williams and what ones are allowable to the partnership.

For the foregoing reasons the judgment appealed from is reversed with instructions to the trial court to proceed as herein indicated. Each side to bear its own costs on this appeal.

Houser, J., and Langdon, J., deeming themselves disqualified, did not participate herein.

Rehearing denied.